IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES ANDREW COGLEY,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF BUTLER, *et al,*<br><br>*Defendants.* | Civil Action No. 2:25-cv-1673<br><br>Hon. William S. Stickman IV |

## <u>MEMORANDUM OPINION</u>

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff James Andrew Cogley ("Cogley") filed his first amended complaint (ECF No. 5) against Defendants City of Butler, Butler City Police Department, Sergeant Jeremy Walters ("Walters") in his individual and official capacities, and Officer Jacob May ("May") in his individual and official capacities, (collectively, "Defendants"). He asserts several federal law claims for Fourth Amendment unreasonable search and seizure; Fourth Amendment unreasonable continued seizure/retention of property; violation of the Fourteenth Amendment's procedural due process clause; violation of the Fourteenth Amendment's substantive due process clause; failure to intervene; civil rights conspiracy; violation of the First Amendment for denial of access to communication; violation of the First Amendment for denial of access to communication; and a *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) claim for failure to train and supervise against the City of Butler. Cogley also brings claims under Pennsylvania Law for conversion; trespass to chattels (split into two separate claims); breach of oral contract; and invasion of privacy. Defendants filed a motion to dismiss Cogley's amended complaint for failure to state a claim, or in the alternative, to treat their motion to dismiss as a motion for summary judgment. (ECF Nos.

1

8, 9).  The Court will not convert Defendants' motion to dismiss into a summary judgment motion.  For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion to dismiss.

## I.    FACTUAL BACKGROUND

Cogley, a resident of Butler County, Pennsylvania, has been a real estate investor engaging in buying, selling, and renting real estate properties since November 2006.  (ECF No. 5, ¶¶ 1, 10).  Cogley has used two cell phones—one for personal use and one solely for rental property management—since 2007.  (*Id.* ¶ 11).

On March 17, 2023, Cogley was at his residence on Walker Avenue in Butler, Pennsylvania, negotiating a sale of his real estate property with two private individuals.  (*Id.* ¶ 12).  He was "holding approximately $3,000.00 in earnest money received from the prospective buyers to enter into contracts. The money was either still in or partially in paper bank bands." (*Id.* ¶ 13).

During Cogley's interaction with the prospective buyers, May arrived on scene, intercepted Cogley "at the side of his residence" and executed his arrest "pursuant to an alleged warrant issued by State Parole ("PBPP")." (*Id.* ¶ 14).  Soon after, Walters and another officer (Officer Doctor) arrived on scene, along with a Butler County Probation Officer (John Doe), who "came to the front side of Cogley's property." (*Id.* ¶ 15).  After placing him under arrest, May escorted Cogley to his patrol vehicle, parked near the residence driveway.  (*Id.* ¶ 16).  May then began searching Cogley's person.  A wallet and approximately $3,000.00 in cash were found in Cogley's pockets.  (*Id.* ¶ 17).  Cogley was an active drug addict at the time of the arrest, and while conducting the search, May found "several items of paraphernalia on [Cogley's] person." (*Id.*).

After confiscating the items found during the pat-down search, May placed Cogley in the rear seat of his patrol car, and placed the seized items on the floor of the front passenger seat.  (*Id.*

¶ 19).  Cogley, at some point thereafter, "observed John Doe and [ ] May on the back porch speaking with two of [Cogley's] friends" who had been visiting him.  (*Id.* ¶ 20).  Cogley requested that Officer Doctor "have one of his friends retrieve two cell phones from [his] kitchen table so [he] could access contact numbers and prevent loss or theft of the phones during his detention." (*Id.* ¶ 21).  Officer Doctor accordingly relayed the request to May, who ignored the request and "entered [Cogley's] residence through the kitchen door without permission and retrieved the two cell phones himself."  (*Id.* ¶¶ 22–23).  Once May seized the two cell phones, he placed them with the previously confiscated items on the floor of the front passenger seat.  (*Id.* ¶ 24).

According to Cogley, May proceeded to tell Walters—the supervising officer—"that he observed suspected drug paraphernalia on [Cogley's] kitchen table.  Thereafter, Cogley "was transferred from [ ] May's patrol vehicle to Officer Doctor's patrol vehicle while Officer Doctor and Defendant Walters accompanied him.  (*Id.* ¶¶ 25–26).  According to Cogley, "[u]nder the supervision and direction of [ ] Walters, [ ] May left the scene to obtain a search warrant for [Cogley's] residence based on the alleged drug paraphernalia," taking Cogley's confiscated wallet, money, and cell phones with him in his patrol car.  (*Id.* ¶¶ 27–28).

Officer Doctor then transferred Cogley to Butler County Prison ("BCP"), where he was "committed pursuant to the PBPP warrant on an unrelated technical parole violation."  (*Id.* ¶ 29). While Cogley was in processing at BCP, May and Officer Doctor came back to return his $2,700.00 of seized cash, explaining "we did not find enough drugs to keep your money," despite, as Cogley contends, the fact that no drugs were found.  (*Id.* ¶¶ 30–31).  During the interaction, Cogley "demanded the return of his cell phones," to which May refused, and he left with Officer Doctor.  (*Id.* ¶ 32).

Sometime thereafter, Cogley "received a copy of the search warrant for his residence indicating the alleged discovery of suspected drug paraphernalia during the search." (*Id.* ¶ 33). Several hours later, Cogley was arraigned "on a single charge of possession of drug paraphernalia and committed to BCP in lieu of a $10,000 bond." (*Id.* ¶ 34).

"On April 28, 2023, [Cogley] initiated legal action regarding the unlawful seizure of his cell phones by filing a Petition for Writ of Mandamus in the Butler County Court of Common Pleas." (*Id.* ¶ 35). On May 9, 2023, the petition was personally served upon Defendants by the sheriff, but "Defendants did not file any response, objection, or appearance in the [m]andamus action, despite having full notice of the unlawful retention of the property." (*Id.* ¶ 45). On June 6, 2023, Defendants were again served with an amended petition, "directing a response within 20 days," and Defendants again failed to "file any response, objection, or appearance in the [m]andamus action, despite having full notice of the unlawful retention of property." (*Id.*). The court of common pleas granted the petition on July 6, 2023, "expressly ordering the return of the seized cell phones." (*Id.* ¶ 46). Cogley asserts that "Defendants still failed to comply with the order and did not return the phones until November 17, 2023, when [Cogley] retrieved them from the City Solicitor," approximately eight months after the original seizure, and four months after the mandamus order. (*Id.*).

A short time after initiating the legal action on April 28, 2023, Cogley was informed by a member of his family "that his residence had been 'trashed,' including the first-floor apartment where he resided and the basement where he stored his deceased mother's belongings inherited in 2021." (*Id.* ¶ 36). Cogley asserts that "Defendants had emptied trash bins and tossed papers, files, mail, and contents onto the floors, causing extensive damage," further explaining that the boxes and containers where he kept his mother's belongings were emptied, and further destruction was

caused to the basement. (*Id.* ¶¶ 37–38). "Concurrent with this discovery, [Cogley's] family member found several personal possessions missing, including a 60" flat-screen TV and a cordless drill and bit case." (*Id.* ¶ 39).

According to Cogley, the information his family member provided revealed that "Defendants had failed to secure [his] residence" even though "Walters specifically assured [him] that his residence and property would be secured after the search." (*Id.* ¶¶ 40–41). He asserts that the back door was left "unsecured" and unlocked, the door to the basement "was left unlocked and unsecured," and "a front bedroom window was left unlocked," all of which provided "easy access for damage and theft." (*Id.* ¶ 42).

Cogley additionally asserts that he had "previously had two cell phones confiscated by Defendants or agents of the City [of Butler] and BCPD in 2015 without cause or warrant[] and was forced to seek court intervention to retrieve them." (*Id.* ¶ 43). On April 28, 2023, the same day the initial petition for writ of mandamus was served on Defendants, Defendants were served with this civil action. (*Id.* ¶ 47). The city solicitor entered an appearance for this civil action, but never appeared or responded to the mandamus action. (*Id.*). In their answer to the original complaint, Cogley, for the first time, was given investigative materials indicating that May and Walters connected his cell phones to a separate overdose death investigation involving B.P. (*Id.* ¶ 48). The overdose death involving B.P. was ruled an accidental and drug-related death according to the autopsy and toxicology report. (*Id.*). Cogley also states that he "was never charged with any offense relating to that death investigation." (*Id.* ¶¶ 49–50). Cogley reiterates that "Defendants did not disclose to [him] on March 17, 2023," the date of his arrest, "that his cell phones were being taken or retained for any purpose relating to that B.P. death investigation." (*Id.* ¶ 51).

Even more, Cogley asserts that May and Walters seized his cell phones and retained them "without judicial authorization and without probable cause supporting any connection between [him] and [the] accidental death," and "no warrants were obtained until on/about May 13, 2023 [sic], after being served with the [m]andamus [p]etition." He further asserts that the officers on the scene failed to obtain a search warrant for his cell phones at the time they were seized. (*Id.* ¶ 53).

## II.    LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable

inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

### III.    ANALYSIS

Initially, the Court must confront Defendants' request to consider their Rule 12(b)(6) motion to dismiss as a motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Rule") 56. (ECF No. 9). Defendants suggest that Cogley "bases his Complaint on the assertion that Defendants violated several of his constitutional rights," including the unreasonable seizure

7

of his cell phones, "yet, [Cogley] has already addressed this through litigation in the Court of Common Pleas of Butler County in 2023," when he filed a Petition for Writ of Mandamus and Prohibition for their return, which was granted pursuant to an order of court (" the Order"). (*Id.* at 6). Defendants attached a copy of the Order to their motion to dismiss and further requests that the Court take judicial notice of the docket entries for that litigation. (*Id.*). Defendants additionally explain that Cogley "references the incident reports for the two underlying investigations related to the seizure of his cellular telephones" and attaches a copy of those incident reports to their motion to dismiss the amended complaint. (*Id.* at 6–7) (citing ECF Nos. 8-3 & 8-4). Defendants argue that if the attached documents are considered by the Court, "the motion must be treated as one for summary judgment under Rule 56" as opposed to Rule 12(b)(6). (*Id.* at 5) (citing *Caste v. Cohen*, 840 F.2d 173, 179 (3d Cir. 1998)).

The Court disagrees and will not convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. The United States Court of Appeals for the Third Circuit has expressed that when deciding a Rule 12(b)(6) motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Shelley v. Wilson*, 339 F. App'x 136, 137 n. 2 (3d Cir. 2009) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). The Court notes that the Order granting Cogley's petition for writ of mandamus in the underlying action is referenced and relied upon in Cogley's amended complaint, referenced and relied upon in the Defendants' motion to dismiss, and attached as an exhibit to the motion to dismiss. (ECF No. 5, ¶¶ 35, 45–47, 52, 92, 100–101, 108, 116; ECF No. 9, p. 6; ECF No. 8-2). Additionally, a court may take judicial notice of another court's publicly filed docket entries. *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d

535, 537 n.1 (3d Cir. 1968). As such, the Order may be considered by the Court without converting Defendants' motion into one for summary judgment.

Further, the Court may consider the incident reports referenced by Cogley and attached to Defendants' motion to dismiss without requiring the Court to convert the motion into one for summary judgment, "as the authenticity of those documents are undisputed and based on [Cogley's] claims." *See Shaffer v. City of Pitt.*, No. 14-CV-1674, 2015 WL 4878497, at *5 (W.D. Pa. Aug. 14, 2015) *aff'd*, 650 F. App'x 111 (3d Cir. 2016) (finding that police reports and affidavit of probable cause attached to the motion to dismiss were *"integral to or explicitly relied upon"* in the complaint) (emphasis in original) (citing *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010)). Cogley specifically relies on the information in the incident reports in making his claims for violation of the Fourth Amendment, and Defendants further acknowledge Cogley's reliance on those reports. (ECF Nos. 5 & 9).

The cited documents fall within the scope of material the Court can consider without requiring it to convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. The Court will commence its analysis of the Rule 12(b)(6) motion to dismiss Cogley's federal claims.[1]

## A. Constitutional Claims

Cogley pursues multiple claims against May and Walters under 42 U.S.C. § 1983, alleging they violated several of his constitutional rights. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United

---

[1] It is important to note that Cogley's status as a *pro se* plaintiff requires the Court to liberally construe his pleadings, holding them to a less stringent standard than those written by attorneys. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

States and must show that the alleged deprivation was committed by a person acting under the color of state law."[2] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Cogley clearly establishes that both May and Walters are/were "sworn law enforcement officer[s] employed by the Butler City Police Department at all times relevant hereto, *acting under the color of state law*." (ECF No. 5, ¶¶ 4–5) (emphasis added). Cogley's § 1983 claims consist of allegations that May and Walters violated his constitutional rights, specifically those conferred by the First, Fourth, Fifth, and Fourteenth Amendments.

Cogley additionally brings constitutional claims against the City of Butler under the theory of liability provided by *Monell*. (ECF No. 5, ¶ 98). The Court will examine the City of Butler's liability separately.

For the reasons stated below, the Court will grant Defendants' motion to dismiss as it relates to some, but not all, of the constitutional claims.

1. *Cogley sufficiently pleads his Fourth Amendment unreasonable search and seizure claim against Defendants.*[3]

---

[2] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[3] In their reply brief (ECF No. 13, pp. 2–3), Defendants raise a lack of subject matter jurisdiction defense pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Cogley's proper form of relief is available through a motion for return of property under Federal Rule of Criminal Procedure 41(e), and further assert that "this Honorable Court lacks jurisdiction over the resolution of claims concerning property seized during an arrest when those claims are normally resolved through criminal proceedings, especially where, as here, the property has been returned." The Court disagrees. Defendants do not provide any case law or alternative support for their contention, and courts throughout this circuit have explicitly held otherwise. *See Allen v. Pa. Soc. for Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450, 465 (M.D. Pa. 2007) (where plaintiff filed a Pennsylvania Rule of Criminal Procedure 588 motion for the return of his property, the court presiding over the motion was only required to determine if plaintiff "was entitled to lawful possession of non-contraband seized property" and did not evaluate the lawfulness of the search and seizure of said property. The underlying motion was thus not preclusive of the court's

The United States Constitution protects individuals from unreasonable searches and seizures under the Fourth Amendment—providing "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Pennsylvania Constitution, at Article I, section 8, provides the same protections. *Commonwealth v. McCree*, 924 A.2d 621, 626 (2007).

The Fourth Amendment, at its core, provides the utmost protection to one's home—upholding "the right of a man to retreat into his home and there be free from unreasonable government intrusion." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). A Fourth Amendment unreasonable search is the result of the government's intrusion into an area, without a lawful warrant, in which an individual has a reasonable expectation of privacy, the expectation being one that society is willing to recognize. *Commonwealth v. Anderson*, 340 A.3d 297, 307 (2025). An unreasonable seizure occurs when a government actor meaningfully interferes "with an individual's possessory interests in that property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).[4] "A search or seizure conducted without a warrant 'is presumptively unreasonable … subject to a few specifically established, well-delineated exceptions.'" *Commonwealth v. Saunders*, 326 A.3d 888, 896 (2024) (quoting *Interest of T.W.*, 261 A.3d 409, 416 (2021)).

---

examination and evaluation of plaintiff's § 1983 claims regarding the lawfulness of the search and seizure under the Fourth Amendment).

[4] The Supreme Court has routinely limited the Fourth Amendment protections to "proscrib[e] only government action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Jacobsen*, 466 U.S. at 113–14 (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980)).

11

The Court finds that Cogley had an undeniable expectation of privacy in his home, one that society and the Supreme Court has consistently recognized. Additionally, the Supreme Court has held that "'[i]t is a basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 473–74 (1971)). Cogley's factual allegations—which the Court accepts as true—create a plausible claim that the officers conducted an unconstitutional search. Absent applicable "exigent circumstances" or exceptions, the search (and ultimate seizure) is unlawful. *Id.* at 621 n. 25.

Defendants, through their brief supporting the motion to dismiss, admit that they did not obtain a search warrant to lawfully enter Cogley's home and seize his property, but they maintain that several exceptions apply to justify their entrance. First, Defendants assert that Cogley, upon telling May that his cell phones were on the kitchen table inside his residence, "thereby expand[ed] the scope of the search of his person incident to his lawful arrest and consent[ed] to [] May's entrance into his kitchen." (ECF No. 9, p. 6). Defendants attempt to invoke both a search incident to a lawful arrest exception, along with consent exceptions, to excuse their warrantless entrance into Cogley's home. Additionally, Defendants contend that the officer's seizure of the cell phones was justified under the plain view doctrine. (*Id.* at 8).

A search incident to a lawful arrest is a valid exception to a warrantless search "only if it is substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest." *Shipley v. California*, 395 U.S. 818, 819 (1969) (citing *Stoner v. California*, 376 U.S. 483, 486 (1964)). Further, the Supreme Court has held that "the Constitution has never been construed by this Court to allow the police, in the absence of an emergency, to arrest a person outside his home and then take him inside for the purpose of conducting a warrantless search"; rather, "it has

12

always been assumed that one's house cannot lawfully be searched without a search warrant, except as incident to *a lawful arrest therein.*" *Id.* at 820 (emphasis added). Similarly, the Supreme Court of Pennsylvania found that the officers' search of a defendant's home was not incident to his arrest and failed to justify a warrantless search where defendant was arrested outside of his residence and had already been in custody prior to the officers searching his home. *Commonwealth v. Wright*, 742 A.2d 661, 665 (1999).

The scope of a search incident to arrest only permits the search of the arrestee and his "immediate vicinity," that is, the area within the arrestee's reach at the time of his arrest "from within which he might gain possession of a weapon or destructible evidence." *Vale v. Louisiana*, 399 U.S. 30, 33–34 (1970) (further clarifying that "[if] a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house" (citing *Agnello v. United States*, 269 U.S. 20, 32 (1925))). The facts alleged here show that May and Walters' actions were not incident to Cogley's arrest. As in *Wright*, Cogley was not initially arrested inside his residence, but intercepted by May *outside* of his home. Additionally, Cogley was handcuffed and escorted to the police vehicle where May executed a pat-down search. As pled, the initial search of Cogley's person was lawful but the alleged search conducted by May after the pat down exceeded the scope of legality. It was not until after May concluded the pat-down search and placed the items found on Cogley's person in the patrol vehicle that Cogley made the request for his *friends* to retrieve his phones. Cogley's residence, where the contested search was made, was neither within the immediate vicinity in which the arrest was made nor contemporaneous with the arrest itself.[5]

---

[5] The Supreme Court has additionally explained that "the police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest" and as soon as they have exceeded the scope of the lawful search, they are in violation of the Fourth Amendment and

Consent to a warrantless search is lawful if consent was given voluntarily. *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003). Whether consent was voluntary "is a question of fact to be determined from the totality of the circumstances." *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The Third Circuit has established several "critical factors comprising a totality of the circumstances inquiry:" (1) "the setting in which the consent was obtained," (2) "the parties' verbal and non-verbal actions," and (3) "the age, intelligence, and educational background of the consenting individual." *Id.* (citing *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096, 1099 (3d Cir. 1970)). Applying these factors to the facts provided in Cogley's amended complaint, the Court finds that neither May nor Walters (nor any officer on the scene) obtained voluntary consent to search Cogley's residence.

Defendants allege that Cogley and his two friends gave consent to search the residence. They maintain that Cogley "told [ ] May that his cell phones were located in the kitchen of his residence," which purportedly indicated that Cogley was voluntarily expanding the scope of the search. (ECF No. 9, pp. 7–8). And, according to Defendants, May and Walters obtained the additional consent to search the residence from Cogley's friends, who allowed the officers to search the residence. (*Id.* at 8). Based on the facts stated in the amended complaint, the Court disagrees with Defendants' contention. The totality of circumstances surrounding Cogley's alleged consent do not support Defendants' position. Cogley asserts that he asked for one of his friends to retrieve his cell phones. Such a request cannot be construed as voluntary consent for May, or any other officer on the scene, to enter his residence. The Court does not find his request to be sufficiently specific or unequivocal to be understood as a consent to search. *See*

---

any seizure made thereafter is thus unlawful. *Coolidge v. New Hampshire*, 403 U.S. 443, 484, 517 (1971).

*Commonwealth v. Dunne*, 690 A.2d 1233, 1236 (Pa. Super. 1997) ("In order for consent to be valid, it must be 'unequivocal, specific, and voluntary.'" (quoting *Commonwealth v. Gibson*, 638 A.2d 203, 207 (1994)).

Second, Defendants' argument that Cogley's friends gave third-party consent is unavailing. The Supreme has explained that when a party "seeks to justify a warrantless search by proof of voluntary consent," it may do so by showing "that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171–72 (1974).

The facts, as stated in Cogley's amended complaint, do not demonstrate that May and Walters could have perceived Cogley's friends, standing on his porch outside of his residence, as individuals possessing apparent authority over Cogley's residence. Defendants fail to provide the Court with any reason to support their argument that May and Walters, acting as reasonable police officers, could have believed that Cogley's friends had the requisite authority to consent to the contested search. (ECF No. 9, p. 8 (Defendants only assert that the officers identified themselves and the friends let them into Cogley's house)); *See U.S. v. Murray*, 821 F.3d 386, 391–92 (3d Cir. 2016) ("When an individual possesses only apparent, rather than actual, common authority, the Fourth Amendment is not violated if the police officer's entry is 'based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990)).

Cogley has additionally alleged sufficient facts to state a plausible claim that the officers conducted an illegal seizure under the Fourth Amendment. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property."

15

*Jacobsen*, 466 U.S. at 113. Cogley asserts that, "[o]n March 17, 2023, [ ] May entered [Cogley's] residence without [his] consent and without a warrant to enter the home, and seized [Cogley's] two personal cell phones after [he] specifically requested that one of his friends retrieve them instead." (ECF No. 5, ¶ 89). The facts clearly demonstrate that the officers did not possess a warrant to search Cogley's home for purposes of seizing his cell phones. (*Id.* at ¶ 53) ("[n]o search warrant for [Cogley's] cell phones existed at the time they were seized on March 17, 2023."). Additionally, Cogley alleges that "May entered [Cogley's] residence through the kitchen door without permission and retrieved the two cell phones himself" then "placed the cell phones on the front passenger floor of his patrol vehicle" and "left the scene to obtain a search warrant for [Cogley's] residence" while "[Cogley's] wallet, money, and cell phones remained in [May's] possession inside his patrol car." (*Id.* at ¶¶ 23–24, 27–28). Cogley satisfies the pleading requirement to survive a Rule 12(b)(6) motion to dismiss—his possessory interest in the cell phones taken from his home was meaningfully interfered with when May took them to his patrol vehicle and carried them off the premises without legal justification.

In an attempt to defend May's seizure of Cogley's cell phones, Defendants contend that "[o]nce inside [Cogley's residence], officers saw drug paraphernalia and [Cogley's] cell phones on the kitchen table in plain view." (ECF No. 9, p. 8). Defendants are thus arguing that the plain view doctrine applies as an exception to the warrantless seizure of Cogley's cell phones. The plain view doctrine allows a law enforcement officer "to seize, without a warrant, evidence that is found in plain view during a lawful observation of the area from which the evidence is seized." *United States v. Blanding*, No. 18-249-3, 2019 WL 5088465, at *5 (E.D. Pa. Oct. 10, 2019). There are several essential conditions that must be satisfied to justify a warrantless seizure under the plain view doctrine: (1) the officer must be lawfully present in the place where the items at issue are in

16

plain view; (2) the item's "incriminating character" must be "immediately apparent"; and (3) the officer must "have a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136–37 (1990) (internal citations omitted).

In support of applying the plain view doctrine, Defendants assert that Cogley's "cell phones were seized as evidence in connection with an overdose death, and separate search warrants were obtained for [his] cell phones." (ECF No. 9, p. 2). But, per the amended complaint, the warrants were applied for and obtained on May 13, 2023, almost two months after the search of Cogley's residence and seizure of his cell phones, which occurred on March 17, 2023. (ECF Nos. 5 & 8-4, p. 4). Moreover, the Supreme Court has held that "[b]elief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. Such searches are held unlawful notwithstanding facts unquestionably showing probable cause." *Agnello*, 269 U.S. at 33. Even if Cogley's cell phones were instrumentalities of a crime that the officers believed he committed, and they were made aware of the phones' locations, they still needed to obtain consent before conducting a search. Additionally, Defendants' assertion that Cogley's "cell phones were seized as evidence in an overdose death where [Cogley] was a person of interest and retained for the investigative process," relates to an extraneous matter and is unpersuasive. (ECF No. 9, p. 9). The officers were not arresting Cogley for his alleged involvement in the overdose death, thus the cell phones had no established nexus to the specific criminal conduct that was the subject of the arrest warrant—a "technical parole violation." (ECF No. 5, p. 4); *See United States v. Lacosta-Franco*, No. 2:26-CR-27, 2026 WL 906682, at *6–7 (E.D. Pa. Apr. 2, 2026) (finding that there was no nexus between the charged drug possession offenses and the cell phones because the government's attempt to support its search of the cell phones was based on suspicion of conspiracy, but conspiracy was not a charge brought

17

against the defendant which led to her arrest. Searches lacking nexus between the items seized and the crime are unconstitutional).

As pled, the Court finds that the officers were not legally inside Cogley's residence because they were without a warrant and none of the exceptions to the warrant requirement advanced by Defendants are seemingly applicable. As such, the Court will deny Defendants' motion to dismiss Cogley's claims for unreasonable search and seizure pursuant to the Fourth Amendment.

### 2. Cogley sufficiently pleads Fourth Amendment unreasonable seizure and retention of property against May and Walters.

Courts in this circuit have explained that "the Fourth Amendment to the United States Constitution generally prohibits the seizure of property without the issuance of a warrant." *United States v. Williams*, 813 F. Supp. 3d 503, 516 (E.D. Pa. 2016). However, the Supreme Court has held that "certain warrantless seizures of personal property without an exception to the warrant requirement are appropriate. But those seizures are typically analogous to a *Terry* stop: brief detentions based on articulable facts which are limited in scope to fulfill a specific investigatory purpose." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 706 (1983)). A court must view the duration for which seized property is held with scrutiny "because the infringement of an individual's possessory interests compounds with 'each passing day.'" *United States v. Brown*, No. 1:21-CR-251, 2023 WL 8702145, at *2 (M.D. Pa. Dec. 15, 2023) (citing *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011)).

Even if seizure is initially lawful, it "can nevertheless violate the Fourth Amendment if its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *Stabile*, 633 F.3d at 235 (quoting *Jacobsen*, 466 U.S. at 124). The Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests

alleged to justify the intrusion" in making its determination as to whether the seizure became unreasonable. *Id.* (citing *Place*, 462 U.S. at 703). There are four factors that the Court balances to determine if the duration of retaining seized property is reasonable: "(1) the length of the delay; (2) the importance of the seized property to the defendant; (3) whether the defendant had a reduced property interest in the seized item; and (4) the strength of the government's justification for the delay." *United States v. Williams*, No. 17-246, 2023 WL 3407685, at *35 (W.D. Pa. May 12, 2023) (citing *United States v. Smith*, 967 F.3d 198 (2d. Cir. 2020)).

"An individual's phone must be afforded heightened protection as it 'is the digital equivalent of its owner's home, capable of holding a universe of private information.'" *United States v. Williams*, 813 F. Supp. 3d at 515 (quoting *United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2012)). Of course, warrantless seizures of a cell phone are sometimes justified. For instance, a court in the United States District Court for the Eastern District of Pennsylvania found that a defendant's claim that an officer's conduct violated her Fourth Amendment rights by seizing her cell phone and retaining it for an unreasonable period of time was without merit because her incarceration was "wholly concurrent with the Government's seizure of her phone," and since "[a]s a practical matter, cellphones are not permitted in jail" defendant's "status as an inmate" resulted in a diminished property interest in her cellphone." *Lacosta-Franco*, 2026 WL 906682, at *6. However, in the current matter, Cogley has alleged facts that are distinct from those in *Lacosta-Franco*. The facts here create a plausible claim for an illegal seizure of Cogley's cell phones which were further retained for an unreasonable duration.

In conducting the balancing test, the Court must first analyze Cogley's property interest at stake and then turn to its examination of the Defendants' purported rationale for the delay. *United States v. Stabile*, 633 F.3d at 235–36. Cogley alleges that "[s]ince 2007, [he] has maintained two

active phone lines: one personal line and one used exclusively for rental property management." (ECF No. 5, ¶ 11). After he was detained, Cogley requested that one of his friends retrieve his cell phones from the kitchen table so that he "could access contact numbers and prevent loss or theft of the phones during his detention." (*Id.* ¶ 21). Instead, the officers seized Cogley's cell phones. He alleges that May entered his home and seized his two cell phones from the kitchen table. (*Id.* at 89). "At the time of this seizure, there existed no search warrant for [Cogley's] residence, no warrant for [his] cell phones, and no probable cause to believe [the] phones contained evidence of a crime." (*Id.* ¶ 91). It was not until May 9, 2023, almost two months after the date of the seizure, and following Cogley's mandamus petition,[6] that Defendants obtained a warrant for the cell phones. (*Id.* ¶ 92).

Several relevant factors are helpful in establishing Cogley's property interest. First, the length of the delay is illustrative—"[t]he longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one." *United States v. Wright*, 534 F. Supp. 3d 416, 423–24 (M.D. Pa. 2021) (quoting *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)). To determine if the length of the seizure is unreasonable, the Court must "take into account whether the police diligently pursue[d] their investigation." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 709 (1983)); *see also Illinois v. McArthur*, 531 U.S. 326, 333 (2001) (the delay should be "no longer than reasonably necessary for the police, acting with diligence, to obtain a warrant.").

---

[6] "On April 28, 2023, Plaintiff initiated legal action regarding the unlawful seizure of his cell phones by filing a Petition for Writ of Mandamus in the Butler County Court of Common Pleas." (ECF No. 5, ¶ 35).

Cogley claims that "Defendants continued to retain the phones without any judicial authorization from March 17, 2023, until May 13, 2023, when Defendants finally applied for search warrants only after they were served with [Cogley's] Petition for Writ of Mandamus on May 9, 2023." (ECF No. 5, ¶ 100).  Additionally, he asserts that "on April 28, 2023, [he] initiated legal action regarding the unlawful seizure of his cell phones by filing a Petition for Writ of Mandamus in the Butler County Court of Common Pleas," which Defendants were served with on May 9, 2023, but allegedly failed to respond to.  (ECF No. 5, ¶ 35).  He then filed an Amended Petition for Writ of Mandamus on June 6, 2023, but again, "Defendants did not file any response, objection, or appearance in the Mandamus action, despite having full notice of the unlawful retention of the property." (*Id.* ¶ 45).  On September 28, 2023, "Judge Timothy F. McCune of the Butler County Court of Common Pleas granted [Cogley's] Petition for Writ of Mandamus," but Defendants did not abide by the Order until October 6, 2023.  (*Id.* ¶ 101).

According to Defendants, Cogley's unreasonable continued seizure and retention of property claim "is meritless where [Cogley's] cell phones were seized as evidence in an overdose death where [he] was a person of interest and retained for the investigative process." (ECF No. 9, p. 9).  Defendants further assert that Cogley's claims for unlawful seizures are moot because his devices were returned to him.  (ECF No. 9, p. 2).

When reviewing the allegations in the amended complaint, and Defendants' attempt to contradict the Fourth Amendment claims, the Court finds that Cogley has sufficiently shown that Defendants were neither diligent in obtaining a warrant nor responsive to his petitions.  *See Williams*, 813 F. Supp. 3d at 520 ("Rather than a brief *Terry*-style seizure of property to expeditiously fulfill an investigatory purpose, this was a full deprivation of property which extended for several days before a warrant was obtained.").

21

The Court notes that Cogley's possessory interest was diminished when he was taken into custody at the BCP. The facts at issue are similar to those where "courts have recognized that when a defendant is incarcerated, his or her property interest in cellular telephones and their contents is greatly diminished because the defendant cannot use the devices while incarcerated." *United States v. Williams*, No. 17-CR-246, 2023 WL 3407685, at *37 (W.D. Pa. May 12, 2023); *see also United States v. Carey*, No. 3:18-CR-037, 2020 WL 59607, at *2 (M.D. Pa. Jan. 6, 2020) ("Although [Defendant] undoubtedly has some interest in his cell phones, his interest was minimal at best given his immediate arrest and detention at the Lackawanna County Prison, where he is not permitted to use or possess cell phones."). Cogley's amended complaint asserts that he was transported to BCP where he "was committed pursuant to the PBPP warrant on an unrelated technical parole violation" and "was arraigned several hours later on a single charge of possession of drug paraphernalia and committed to BCP in lieu of a $10,000 bond." (ECF No. 5, ¶¶ 29, 34). Although courts have found that incarceration weighs against an individual's possessory interest in cell phones, the facts do not specify how long Cogley was incarcerated for, which would allow the Court to determine whether he was unable to possess the cell phones at any time throughout the duration of the seizure, or whether he was released and would thus regain an enhanced interest in his cell phones.

Still, Cogley's allegations differ from those where courts have found insufficient possessory interests to state a claim for unreasonable continued seizure of property. Several courts, including the Third Circuit, have explained that "defendants who 'never sought return of the property' cannot argue that delay adversely affected Fourth Amendment rights.'" *United States v. Wright*, 534 F. Supp. 3d at 427 (quoting *Stabile*, 633 F.3d at 236). Cogley asserts that he sought return of his cell phones several times, including an immediate request upon arriving at BCP on

22

March 17, 2023, and initiating legal action on April 28, 2023, "by filing a Petition for Writ of Mandamus in the Butler County Court of Common Pleas" seeking "the immediate return of his cell phones." (ECF No. 5, ¶¶ 32, 34, 45, 61).

The Court holds that Cogley plausibly alleged the initial seizure of his cell phones was unreasonable. Even if the officers' initial seizure was not unreasonable in violation of the Fourth Amendment, the Court finds that Cogley has alleged a plausible claim for unreasonable continued seizure and retention of property – i.e., the retention of his cell phones, beginning with the seizure on March 17, 2023, until they were finally returned on October 6, 2023. Therefore, the Court will deny Defendants' motion to dismiss Cogley's Fourth Amendment claim for unlawful seizure and retention of property.

### 3. Cogley fails to state a Fourteenth Amendment procedural due process claim pursuant to § 1983.

Cogley's Fourteenth Amendment procedural due process claim will be dismissed with prejudice. The Third Circuit employs a "two-stage analysis" to a plaintiff's Fourteenth Amendment procedural due process claim pursuant to § 1983, "inquiring (1) whether 'the asserted individual interests are encompassed within the fourteenth amendment's protection of "life, liberty, or property"'; and (2) whether the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984)). Cogley's Fourteenth Amendment procedural due process claim arises from May and Walters' alleged seizure and retention of his cell phones. (ECF No. 5, ¶106). He asserts that May and Walters failed to provide him with "notice of any procedure or process to retrieve the [cell phones], that he "was never served with any warrant relating to his cell phones" or "provided [with] any documentation advising him of how to contest the seizure or seek return of [the cell phones]," and that "Defendants continued to retain [his] phones even after [he] obtained

23

a Mandamus Order from the Butler County Court of Common Pleas... ."  (*Id.* ¶¶ 107–08). Cogley's contention that May and Walters' "refusal to provide any notice or process, combined with the prolonged retention of [his] phones, deprived [him] of property without due process of law," is unavailing.  (*Id.* ¶ 110).

"At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)).  Cogley alleges that he was deprived of a property interest in his cell phones.  Consistent with the Court's analysis of Cogley's claim for unlawful seizure, the Court finds that he has a possessory interest in his cell phones. *See id.* ("It is also well established that possessory interests in property invoke procedural due process protections.").  Thus, Cogley's allegations satisfy the first prong of the procedural due process claim.  However, the Court finds that his claim fails at prong two.

Courts in this circuit have held that the "focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his property or property interest." *Bruce v. City Pittston, Pa.*, No. 3:23-CV-00711, 2023 WL 6609023, at *10 (M.D. Pa. Oct. 10. 2023) (quoting *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 397–98 (E.D. Pa. 2012)).  Here, Cogley's claim that Defendants violated his right to procedural due process focuses on May and Walters' conduct rather than the adequacy of the remedial procedure.  A United States District Court for the Eastern District of Pennsylvania explained that "[a]n unauthorized, intentional deprivation of property by government employees does not violate the Due Process Clause so long as there is a 'meaningful post[-]deprivation remedy' available to the plaintiff." *Lewis v. Heckler*, No. 11-CV-6492, 2012

24

WL 1646862, at *3 (E.D. Pa. May 10, 2012) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Accordingly, Cogley's contention that he "was never served with any warrant relating to his cell phones" is immaterial to a claim for the violation of procedural due process. (ECF No. 5, ¶ 107).

Cogley alleges that May and Walters' failure to give notice further contributed to a violation of his Fourteenth Amendment procedural due process rights. (ECF No. 5, ¶ 110). Although they did not provide a pre-deprivation hearing prior to seizing Cogley's cell phones, the Court will look to "the post-deprivation process that the state provides to determine if it was 'constitutionally adequate[,] … [and do so by] examin[ing] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)); *see also Abbott*, 164 F.3d at 146 ("Prior notice is not, however, absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures.") (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 605–06 (1974)). Courts in this circuit and throughout Pennsylvania have held that "Pennsylvania law provides a process to challenge the seizure of property and a protocol to request its return." *Id.* (citing Pa. R. Crim. P. 588(A)[7]); *see also Guarrasi v. Cnty. of Bucks*, No. 10-CV-1879, 2011 WL 1226118, at *9 (E.D. Pa. Mar. 29, 2011) ("Courts have consistently held that Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy' to cure an improper seizure of property.").

---

[7] Pa. R. Crim. P. Rule 588 (A) states: "A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized."

25

The Court notes that a post-deprivation procedure was available to Cogley. As he asserts in his complaint, Cogley successfully petitioned and "obtained a Mandamus Order from the Butler County Court of Common Pleas" which required the return his cell phones. (ECF No. 5, ¶ 108). He further cites to *City of West Covina v. Perkins*, 525 U.S. 234 (1999) to support his assertion that he should have received notice from Defendants of the procedures available to him in seeking the return of his cell phones. (*Id.* ¶ 109). However, Cogley misunderstood the Supreme Court's holding. In reality, the Supreme Court explicitly noted that:

> No [ ] rationale justifies requiring individualized notice of state-law remedies which … are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.

*City of West Covina*, 525 U.S. at 241. In other words, the only notice that a defendant is required to provide is that the property was seized, not what a plaintiff's options are in seeking a return of the property. Cogley was clearly present at the moment his cell phones were taken by May, thereby putting him on actual notice that his property was seized. Moreover, the absence of any advisement on remedial procedure had no impact on Cogley's ability to obtain relief—his petition for writ of mandamus was granted requiring return of his cell phones. (ECF No. 5, ¶¶ 20–32, 46).

The Court holds that Cogley has not stated a plausible claim for a violation of his Fourteenth Amendment due process rights. Rather, he alleged that he was given, and took advantage of, a post-deprivation proceeding to retrieve his seized property. Cogley's claim that Defendants violated his procedural due process rights will be dismissed with prejudice, as amendment would be futile.[8]

---

[8] In a civil rights action, when dismissing an action for failure to state a claim pursuant to Rule 12(b)(6), a court is customarily required—even in the absence of the plaintiff's request—to grant the plaintiff leave to amend its deficient complaint. *Fletcher-Harlee Corp. v. Pote Concrete*

4. *Cogley fails to plead a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983.*

The Court agrees with Defendants' contention in their motion to dismiss that Cogley has failed to state a Fourteenth Amendment substantive due process violation. As the Supreme Court has explained, "[§] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*

Cogley claims that May and Walters (1) "arbitrarily connected [his] phones to a separate overdose death investigation on the bases of uncorroborated hearsay"; (2) "lacked any objective evidence linking [him] to the accidental death" or "probable cause or reasonable suspicion to justify seizing or retaining [his] phones for investigative purposes in that matter"; (3) retained his cell phones "for nearly two months without a warrant, and for several additional months after obtaining a warrant that yielded no data, served no legitimate law enforcement purpose and was arbitrary and conscious-shocking"; and (4) made "[t]he deliberate decision to seek warrants only after being served with [Cogley's] Mandamus Petition, rather than prior to seizure or promptly thereafter" — all of which, according to Cogley, "deprived [him] of [his] substantive due process rights under the Fourteenth Amendment." (ECF No. 5, ¶¶ 113–117). Cogley's Fourteenth Amendment substantive due process claims arise from the alleged seizure and retention of his cell

---

*Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). However, where amendment would be futile, the Court need not give leave to amend. *Id.*; *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility). "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024).

phones. The Supreme Court clarified that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The allegations making up Cogley's substantive due process claim are afforded explicit protection in the Fourth Amendment, and following the Supreme Court's guidance, the Court finds it inappropriate to analyze the conduct under a substantive due process claim.

In his brief opposing Defendants' motion to dismiss, Cogley contends that "[e]ven if the Court ultimately determines the Fourth Amendment provides the primary framework, dismissal is inappropriate because [he] has plausibly alleged arbitrary and conscious-shocking conduct that directly impacted his liberty and property interests," and further asserts, "[w]hen a plaintiff plausibly alleges both Fourth and Fourteenth Amendment violations, dismissal at the Rule 12(b)(6) stage is not warranted." (ECF No. 12, p. 10) (citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010)[9]). But Cogley fails to plausibly allege his substantive due process rights under the Fourteenth Amendment were violated.

"To prevail on a non-legislative[10] substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth

---

[9] Cogley's use of *Betts* to support his assertion is futile. In fact, *Betts* contradicts his assertion as the Court found that the plaintiff's "allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment" and thus "foreclose[d] [his] substantive due process claims" under the more-specific-provision rule. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d at 261 (the more-specific-provision rule requires courts to analyze constitutional claims under the constitutional provisions, if any, that specifically cover those claims rather than under the rubric of substantive due process).

[10] There is a crucial distinction between legislative and non-legislative acts. Non-legislative acts "typically apply to one person or to a limited number of persons, while legislative acts, generally

28

Amendment's due process protection applies.'" *Nicholas v. Pa. St. Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000) (quoting *Woodwind Est., Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). Property interests protected by the substantive due process clause are more limited than those protected by the procedural due process clause, thus, "to state a substantive due process claim, 'a plaintiff must have been deprived of a *particular quality* of property interest." *Id.* at 140 (emphasis in original) (quoting *DeBlasio v. Zoning Bd. Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)). The requisite "particular quality" of property interest that qualifies for substantive due process protection is one that is "'fundamental' under the United States Constitution." *Id.* (citing *Regents Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985)).

Cogley's property interest in his cell phones is not a fundamental property right. The Third Circuit has consistently limited substantive due process protection to property interests implicating real property ownership, and this circuit has "been reluctant to extend substantive due process protection to other, less fundamental property interests." *Id.* at 14 (internal citations omitted). Cogley contends that "Defendants' argument that substantive due process is categorically unavailable because a cell phone is not 'fundamental property' misapplies *Nicholas* and ignores the nature of the government's conduct alleged here." (ECF No. 12, p. 10). He seemingly ignores the first requirement to bring a plausible substantive due process claim. A United States District Court for the Middle District of Pennsylvania facing similar claims to those at issue here explained that the plaintiff overlooked the issue of whether a license to carry concealed firearms "is a fundamental property or liberty interest for purposes of substantive due process," and instead focused "on the appropriate 'shocks the conscious standard of review.'" *Hain v. DeLeo*, No. 1:08-

_____

laws and broad executive regulations, apply to large segments of society." *Nicholas*, 227 F.3d at 139 n. 1. A search and seizure conducted by city officers is a non-legislative act.

CV-2136, 2010 WL 4514315, at *10 (M.D. Pa. Nov. 2, 2010). The court explained that the issue of whether the government's conduct constituted an arbitrary or irrational deprivation that "shocks the conscience" is "a secondary question." *Id.* (citing *Nicholas*, 227 F.3d at 142). Applying *Nicholas*, the district court further noted that "[i]f the interest is not 'fundamental,' … the government action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.*

For the same reasons cited in *Hain*, the Court finds that Cogley failed to allege that Defendants violated his Fourteenth Amendment substantive due process rights. His claim is better suited for a Fourth Amendment claim, which he has brought, and he does not have a fundamental interest in his cell phones that would qualify for substantive due process protection. The Court will grant Defendants' motion to dismiss as to Cogley's Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983 with prejudice, as amendment would be futile.

> 5. *Cogley fails to state a claim for failure to intervene pursuant to 42 U.S.C. § 1983.*

Cogley additionally attempts to bring a claim for failure to intervene under § 1983 against Defendant Walters and the City of Butler. An officer may be liable for his failure to intervene if the plaintiff established that: (1) his "'underlying constitutional rights were violated'; (2) the officer had a duty to intervene; and (3) the officer … had a 'realistic and reasonable opportunity to intervene.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 419 (E.D. Pa. 2019) (first quoting *Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 204 (3d Cir. 2011); and then quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

In his amended complaint, Cogley alleges that Walters (1) "was present on scene when [ ] May entered [Cogley's] residence without consent and seized [his] cell phones"; (2) "had both the opportunity and the authority to prevent [ ] May from unlawfully entering [Cogley's] home, seizing

30

[his] property, and retaining the cell phones without legal justification"; and (3) "[d]espite this opportunity, [ ] Walters knowingly failed to intervene or stop [ ] May's unconstitutional conduct." (ECF No. 5, ¶¶ 120–122). Walter's conduct, according to Cogley, constituted a failure to intervene and "directly caused and contributed to the violation of [his] clearly established rights under the Fourth and Fourteenth Amendments" and specifically, Walters' "inaction was the moving force in the constitutional violations" he suffered. (*Id.* at ¶¶ 123–124).

Cogley's failure to intervene claim is founded on the alleged unlawful search and seizure conducted at the time of his arrest on March 17, 2023. Although the Court has found that he plausibly alleged a constitutional violation that appears to satisfy the first prong of a failure to intervene claim (that Defendants May and Walters conducted an unreasonable search and seizure upon entering his home and seizing his cell phones without the authority to do so), such constitutional violations are insufficient for purposes of bringing a claim for failure to intervene.

The Third Circuit explained that it has "recognized a right to have a government actor intervene when the underlying constitutional violation *involves excessive force or sexual assault* of a person in custody or detention," it nevertheless concluded "that [its] precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023); *see also Weimer v. Cnty. of Fayette*, 972 F.3d 177, 190–91 (3d Cir. 2020) (explaining that the Third Circuit has "not extended [the duty to intervene] to prosecutors who fail to intervene to prevent police from conducting unconstitutional investigations."). Several district courts, following Third Circuit guidance, refused to find a duty to intervene in contexts outside of excessive force. As a district court in the Western District of Pennsylvania explicitly stated, "there is no such thing as a failure[ ] to [ ] intervene claim in the context of an unlawful search." *Parker v. Gainey*, No. 2:23-CV-2102, 2025 WL 2062563, at*8

(W.D. Pa. July 23, 2025); *see also Sanders v. Rose*, No. 1:10-CV-01241, 2021 WL 103662, at *9 (M.D. Pa. Jan. 12, 2021) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005)) ("While 'legally distinct, the fate of [a] plaintiff's failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene."). Because Cogley has neither alleged that May (or any other officer on the scene) used excessive force, nor alleged facts that any force was used against him while the officers were executing his arrest, he has failed to state a plausible claim for failure to intervene.

The Court will accordingly dismiss Cogley's failure to intervene claim with prejudice, as amendment would be futile.

### 6. *Cogley's civil rights conspiracy claim pursuant to § 1983 is sufficient to survive Defendants' motion to dismiss.*

Cogley alleges that May and Walters' conduct amounted to conspiracy under § 1983. Cogley brings his conspiracy claim against May, Walters, and the City of Butler. A plaintiff must satisfy several elements to state a claim for civil rights conspiracy under § 1983, showing that: (1) two or more persons, acting under the color of state law, conspired to deprive the plaintiff of his constitutional rights; (2) one or more of those persons performed an "overt act in furtherance of the conspiracy"; and (3) that overt act resulted in an injury or injuries to "the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n. 15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). If a plaintiff "establishes that the object of the conspiracy was the deprivation of a federally protected right," he must then "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.* at 295 (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009)). For purposes of satisfying the requisite showing of an agreement, a plaintiff "must

32

demonstrate that 'the state actors named as defendants in the[] complaint somehow reached an understanding to deny [the plaintiff] his rights' and in the absence of direct proof, that 'meeting of the minds' or 'understanding or agreement to conspire' can be 'infer[red]' from circumstantial evidence." *Id.* (internal citations omitted) (first citing *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993); and then citing *Starzell v. City of Phila.*, 533 F.3d. 183, 205 (3d Cir. 2008)).

Circumstantial evidence may include facts indicating "that the alleged conspirators 'did or said something … to create an understanding,' 'the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy.'" *Id.* (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010)). For purposes of showing a conspiracy between police officers, an agreement may be evidenced through facts asserting "'conversations' between officers about the incident, 'allegedly distorted' stories that 'emerged,' an 'awareness of conflicting stories' and 'irregularities in the series of official investigations' into the incident." *Id.* (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 627–28 (7th Cir. 1979)). Additionally, where officers make material omissions in any "contemporaneous police reports," the factfinder can reasonably infer that they "'agreed to abide' by a claim 'about what happened' and agreed to represent it falsely." *Id.* at 296 (quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1256 (7th Cir. 1984)).

Cogley alleges several facts that the Court finds sufficient for pleading a civil rights conspiracy under § 1983. Initially, the Court notes that Cogley pled a constitutional violation, serving as the prerequisite for pleading his civil rights conspiracy claim. As the Court has already found, Cogley has plausibly pled that May and Walters violated his Fourth Amendment rights by conducting an unlawful search and seizure on the day of his arrest. Cogley satisfies the first element of a conspiracy claim by alleging that May and Walters—who were personally involved

33

in the alleged search and seizure—conspired to commit those violations of his constitutional rights. (ECF No. 5, ¶¶ 127–130).  The following factual allegations support his contention: (1) May and Walters were both on the scene; (2) May conducted a pat-down search on Cogley's person and found his wallet, approximately $3,000.00 in cash, and "several items of [drug] paraphernalia," all of which May seized; (3) following Cogley's request for one of his friends to enter his home to retrieve the two cell phones on his kitchen counter, May entered the residence himself and seized the two cell phones; (4) May alleged to Walters "that he observed suspected drug paraphernalia on [Cogley's] kitchen table"; (5) Walters, acting as May's supervisor, directed May to leave the scene in an effort to obtain a search warrant for Cogley's house "based on the alleged drug paraphernalia" May allegedly saw on the table; (6) May followed the instruction and left the scene with May's wallet, money, and cell phones in his patrol car; (7) while Cogley was being processed, May (along with Officer Doctor) returned Cogley's cash and stated that they "did not find enough drugs to keep [his] money," despite Cogley's assertion that no drugs were found.  (*Id.* ¶¶ 14–15, 17, 19, 23-27, 30, 31).

Further, the incident reports included in Defendants' answer to Cogley's initial complaint contain facts that fully contradict the allegations in Cogley's amended complaint—those which the Court must take as true at the motion to dismiss stage.  The incident report states that after arresting Cogley outside of his residence and securing him in the back of May's patrol vehicle, May and Officer Doctor "made contact" with the individuals who were on Cogley's front porch who "allowed [them] inside of the kitchen while [they] discussed [their] reason for being at the residence and [their] on[-]going investigation.  While [they] were in the kitchen, [they] observed, in plain view, numerous empty stamp bags, and empty boxes of Narcan in the trash can.  In addition, Cogley requested that [they] take his cell phones with him to jail."  (ECF No. 3-1, p. 6).

34

Cogley's amended complaint contains facts distinct from those included in the incident report. Cogley maintains that neither he nor his friends gave consent to May or Officer Doctor to enter his residence. (ECF No. 5, ¶¶ 23, 58, 60, 89, 94, 120). Cogley's factual allegations, which the Court must take as true at the motion to dismiss stage, contradict those in the incident report. Following the Third Circuit's holding in *Jutrowski*, the Court can reasonably infer – based on Cogley's pleadings – that May and Walters "'agreed to abide' by a claim 'about what happened' and agreed to represent it falsely." *Jutrowski*, 904 F.3d at 296 (quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1256 (7th Cir. 1984)).

Although Cogley did not assert facts indicating that there was a specific or explicit agreement made between Walters and May, he provided sufficient circumstantial allegations to survive Defendants' motion to dismiss. *See McIntyre v. Liciardello*, No. 13-CV-2773, 2020 WL 605717, at *12 (E.D. Pa. Feb. 7, 2020) (finding that plaintiff's allegations that "Defendants together participated in their initial encounter with Plaintiff, culminating in Plaintiff's arrest and imprisonment, his interrogation, and the preliminary hearing" were indicia of coordinated acts sufficient to survive summary judgment for a civil rights conspiracy claim under § 1983).[11] May and Walters were present on the scene together, Walters was given notice of the search May conducted in Cogley's home and approved of May taking the cell phones, wallet, and money with him off the scene—further seizing Cogley's property.

---

[11] *See also Washington v. City of Jersey City*, No. 24-CV-8597, 2025 WL 1742694, at *10 (D.N.J. June 23, 2025) ("An agreement among the [police] officials is not so implausible as to warrant dismissal. Common sense, which may be relied on at this stage suggests that police officers work together in a coordinated effort when responding to a call together, as opposed to each acting according to their own independent decisions," especially where there is evidence that approval was given to act in a certain way. "[T]he complaint need not identify an express agreement." (internal citations omitted) (first citing *Iqbal*, 556 U.S. at 679; and then citing *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998)))).

The Court will deny Defendants' motion to dismiss as to Cogley's civil rights conspiracy claim pursuant to § 1983.

### 7. *Cogley fails to state a claim under the First Amendment for denial of access to communication.*[12]

Cogley next claims that his First Amendment rights were violated when May and Walters, following his arrest and confinement, "refused to return [Cogley's] cell phones or allow [him] access to the phone numbers and contact information stored on those phones." (ECF No. 5, ¶¶ 135, 142). Cogley fails to plead a plausible claim for a First Amendment violation.

Cogley alleges that the initial seizure and continued refusal to return his cell phones or to allow him access to their contents constituted a deprivation of his "freedom of speech and freedom of association, in violation of the First Amendment." (*Id.* ¶ 137). Courts in this circuit have explained that prisoners "may have a limited First Amendment right to communicate with family and friends"; however, "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Concepcion v. Russel*, No. 21-CV-1060, 2021 WL 2529816, at *6 (E.D. Pa. June 21, 2021) (citing *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003)); *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009). In Pennsylvania, the Pennsylvania Department of Corrections and county jails enforce strict rules regarding what property is banned for prisoners. Cell phones are banned property. In the Butler County Prison, "each inmate will be able to complete three collect phone calls using the inmate phone system. These calls will be billed to the number called by the inmate. After these first three calls an account must be set up with the phone system provider." *See Telephone*

---

[12] Cogley makes two separate claims for First Amendment denial of access to communication against May, Walters, and the City of Butler. The claims are substantially the same, so the Court will treat them as one claim for the violation of his First Amendment rights.

36

*Communication,* BUTLER CNTY. PA., *https://www.butlercountypa.gov/171/Telephone-Communication.*[13]

Although Cogley alleges that Defendants refused to return or provide him access to the contents of his cell phones causing him to "permanently los[e] the ability to communicate with his brother before his brother's death," he failed to plead a plausible claim that his First Amendment rights were violated while imprisoned. (ECF No. 5, ¶ 139). Cogley does not contend that he was unable to use the prison's telephone system to place telephone calls. He had access to alternative means of communicating with family and friends outside of prison – mail and in-person visits. His inability to access family and friend contact information on his cell phone is insufficient to form the basis of a violation of the First Amendment.

The Court will dismiss Cogley's First Amendment claim for denial of access to communication with prejudice as it finds amendment would be futile.

  8.  *Cogley's failure to train and supervise claims against the City of Butler are
      sufficient to survive Defendants' motion to dismiss.*

To assert a *Monell* claim against a municipality pursuant to § 1983, a plaintiff must allege that he has suffered a deprivation of a constitutional right, and that the deprivation was caused by the municipality itself. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell,* 436 U.S. at 694–95 (1978)). A municipality cannot be held liable under the theory of *respondeat superior* or vicarious liability where the injury was "inflicted solely by [government] employees or agents." *Id.; Monell,* 436 U.S. at 694. Under *Monell,* a plaintiff may bring his claim by either showing "that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate

---

[13] Courts can take judicial notice of information made publicly available on government websites. *Vanderklok v. United States,* 868 F.3d 189, 205 n. 16 (3d Cir. 2017).

or conscious choice.'"[14] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). A municipal policy is created by a decisionmaker who has the "final authority to establish municipal policy with respect to the action" and thus "issues an official proclamation, policy, or edict," whereas a custom is evidenced "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." *Est. of Roman*, 914 F.3d at 798 (internal citations omitted). In addition to alleging a municipal custom or policy, "[a] plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (1996)).

Cogley's amended complaint alleges that the City of Butler is liable, pursuant to § 1983, for its officers' unconstitutional search and seizure in violation of his Fourth Amendment rights, unreasonable continued seizure of his property, violation of his substantive due process rights under the Fourteenth Amendment, failure to intervene to stop unconstitutional conduct, civil rights conspiracy, and violation of Cogley's First Amendment rights. (ECF No. 5, ¶¶ 98, 104, 111, 118, 125, 132, 140, 147). Notably, Cogley contends that the City of Butler "has an established custom, pattern, and practice of seizing and holding phones without lawful process, which was the moving force behind the violations alleged herein." (*Id.* ¶ 98).[15] Cogley separately alleges that the City

---

[14] Allegations that the municipality's "failure or inadequacy" caused the plaintiff's injury will often arise as claims for failure to train, failure to supervise, and failure to discipline. *Forrest*, 930 F.3d at 105 (citing *Est. of Roman*, 914 F.3d at 798–99).

[15] Cogley's allegations throughout the amended complaint, that the City of Butler "maintains a custom and practice of seizing and retaining cellphones," further include that it has a custom of seizing cell phones "without warrants, without notice, and without any lawful return process, that it is an "arbitrary and unjustified" custom and practice, that it employs "a custom and practice of permitting officers to seize and retain citizens' cell phones" unlawfully and without "proper supervision" further "ignore[ing] or fail[ing] to correct constitutional violations by subordinates, and those practices include "prolonged retention without lawful process or oversight." (ECF No. 5, ¶¶ 111, 118, 125, 132, 140).

of Butler is liable under *Monell* for its failure to train and supervise, which he claims caused the aforementioned constitutional violations. (*Id.* ¶ 149–150); *see also Id.* ¶ 140 (alleging that the "City of Butler is liable under *Monell* because this deprivation resulted from the City's customs, policies, or failures to train and supervise officers regarding the seizure and retention of citizens' cell phones and personal communication devices.").

Cogley has failed to plead that the City of Butler has a municipal policy that caused the alleged constitutional violations. The amended complaint does not describe actions or conduct of a municipal decisionmaker possessing "final authority to establish a municipal policy." *McTernan v. City of York*, 564 F.3d 636, 658–59 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). The Third Circuit requires a plaintiff to "identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The Supreme Court has explained that a municipality "cannot be held liable under § 1983 unless [plaintiff] proved the existence of an unconstitutional policy," and further found that where the plaintiff does not "contend that anyone in city government ever promulgated, or even articulated, such a policy," the plaintiff fails to show the existence of the alleged policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128–30 (3d Cir. 1988). Cogley's bare assertion that the City of Butler, "through its policymakers and supervisory officials," has implemented a policy that led to the alleged constitutional violations, is without merit. *See Vacek v. Pa. Jud. Conduct Bd.*, No. 08-CV-221, 2010 WL 831000, at *9 (W.D. Pa. Mar. 4, 2010) ("Merely alleging that a municipality has 'engaged in a policy, custom, and practice' that violated plaintiff's federal rights is precisely the formulaic recitation of legal elements that the *Twombly* Court determined was insufficient to defeat

a motion." (citing *Miller v. N. Belle Vernon Borough*, No. 8-CV-1435, 2009 WL 112854 (W.D. Pa. Jan. 15, 2009))).

Conversely, in construing Cogley's amended complaint liberally, the Court finds that Cogley has pled sufficient facts to indicate that the City of Butler maintained a custom that caused the alleged constitutional violations. To demonstrate the existence of an unconstitutional custom, the plaintiff must show the existence of a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute 'custom or usage' with the force of law." *Praprotnik*, 485 U.S. at 127. Additionally, a custom may "be proven by showing that a policymaker acquiesced to a course of conduct," and that policymaker need not be "specifically identified by the plaintiff's evidence" so long as the widespread practice is "ascribable to local government policymakers." *Olivieri v. Cnty. of Bucks*, 502 F. App'x 184, 189 (3d Cir. 2012) (internal citations omitted) (first citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); and then citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Courts in this circuit have noted that "[t]here are no 'bright-line rules' establishing a minimum number of incidents that are necessary to demonstrate that a widespread custom or practice is in operation." *Davila v. N. Reg'l Joint Police Bd.*, 370 F. Supp. 3d 498, 540–41 (W.D. Pa. 2019) (citing *Beck v. City of Pitt.*, 89 F.3d 996, 972–76 (3d Cir. 1996)).

Cogley argues that the City of Butler has a "custom of confiscating cell phones from citizens without cause or warrant" and, for support, he asserts that in 2015 he "had two cell phones confiscated by Defendants or agents of [the City of Butler] and BCPD without cause or warrant" and the Defendants "refus[ed] to return them absent court intervention." (ECF No. 5, ¶¶ 43–44, 104). Cogley alleges that Walters and May conducted a nearly identical practice here. The Court already determined that Cogley has plausibly alleged that his Fourth Amendment rights were

40

violated when his cell phones were seized from his residence—without a warrant or any exception to a warrant—and were held by Defendants, forcing him to file a petition for writ of mandamus and prohibition in the Butler County Court of Common Pleas. (*Id.* ¶¶ 44–46, 98). Because Cogley sought judicial intervention against the City of Butler in 2015 for "the nearly identical unlawful seizure and prolonged retention" of his cell phones, it is plausible that Defendants were on notice that officers employed by the City of Butler were engaging in unconstitutional conduct and failed to take measures to prevent the conduct from repeating. (*Id.* ¶ 118); *Est. of Roman*, 914 F.3d at 798. Additionally, Cogley sufficiently established the requisite "affirmative link between the … custom 'and the particular constitutional violation he alleges.'" *Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz*, 915 F.2d at 851). His allegations demonstrate that the City of Butler "had knowledge of 'similar unlawful conduct in the past, … failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" *Id.*

Finally, Cogley has adequately pled that the City of Butler may be liable for its failure to train and supervise.[16] "[A] municipality's failure to train police officers only gives rise to a constitutional violation when the failure amounts to deliberate indifference to the rights of persons with whom the police come into contact with." *Montgomery v. De Simone*, 159 F.3d 120, 126–27 (3d Cir. 1998) (citing *City of Canton*, 489 U.S. at 691–94). To establish whether a municipality's failure to train or supervise amounts to "deliberate indifference," the Court analyzes whether

---

[16] Although Cogley does not specify that his claim at Count XIV includes failure to discipline, he subsequently alleges that "the City of Butler failed to adequately train, supervise, and *discipline* its police officers … ." (ECF No. 5, ¶ 150) (emphasis added). Regardless, the Court follows the Third Circuit's guidance, and considers "allegations of failure to train, supervise, and discipline together because they fall under the same species of municipal liability." *Est. of Roman*, 914 F.3d at 799 (citing Rosalie Berger Levinson, *Who Will Supervise Supervisors? Establishing Liab. Failure to Train, Supervise, or Discipline Post-Iqbal/Connick World*, 47 HARV. C.R-C.L. L. REV. 273, 280 (2012)).

plaintiff demonstrated that "(1) municipal policy makers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Est. of Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne Cnty*, 660 F.3d 169, 180 (3d Cir. 2011)). "'[A] pattern of similar constitutional violations by untrained employees' is ordinarily necessary to demonstrate deliberate indifference, but a single incident may, in certain situations, be sufficient" if the "need for training can be said to be 'so obvious' that failure to do so could properly be characterized as 'deliberate indifference to constitutional rights.'" *Zucal v. Cnty. of Lehigh*, 660 F. Supp. 3d 334, 353–54 (E.D. Pa. 2023) (internal citations omitted); *see also Kane v. Chester Cnty. Dep't Child., Youth & Fams.*, 10 F. Supp. 3d 671, 689 (E.D. Pa. 2014) ("[P]laintiff must show that the need for the county to provide specific training in order to avoid constitutional injury was 'highly predictable' or 'patently obvious'" (*citing Connick v. Thompson*, 563 U.S. 51, 63–64 (2011)).

Further, to allege a failure to train, supervise, or discipline under *Monell*, "the Third Circuit has required a plaintiff to show that a municipality has 'contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Simpson v. Ferry*, 202 F. Supp. 3d 444, 454 (E.D. Pa. 2016) (quoting *Rosembert v. Borough of E. Landsowne*, No. 13-CV-2826, 2016 WL 161592, at *9 (E.D. Pa. Jan. 14, 2016)). The plaintiff is required to "prove that the deficiency in training actually caused [the constitutional violation at issue]." *Luzerne Cnty.*, 660 F.3d at 180 (quoting *City of Canton*, 489 U.S. at 391).

42

The City of Butler's policymakers knew, or should have known, that police officers would confront situations that prompt them to search and/or seize an arrestee's person or property without a warrant, that officers contemplating whether they conduct a search and seizure without a warrant can be a difficult choice to make, and making the wrong choice—conducting a warrantless search and seizure without lawful justification—will likely and frequently result in a violation of the arrestee's Fourth Amendment rights. Cogley asserts that:

> the City of Butler failed to adequately train, supervise, and discipline its police officers, including [] May and Walters, in the following areas:
> a. The constitutional limitations governing entry into private residences;
> b. The requirement of probable cause and judicial authorization prior to seizing or retaining personal property such as cell phones;
> c. The duty to provide notice and due process to property owners after seizure; and
> d. The obligation to prevent and report unlawful searches, seizures, and property damage committed by other officers.

(ECF No. 5, ¶ 150).

The Court has found that Cogley plausibly alleged constitutional violations for unlawful search and seizure, and further finds that he sufficiently identified "a failure to provide specific training that has a causal nexus with [his] injuries" and sufficiently "demonstrate[s] that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." In addition to referencing the same violative conduct he experienced in 2015, Cogley asserts that the City of Butler's "need for more or different training was so obvious, and the inadequacy so likely to result in constitutional violations, that [its] policymakers can be said to have been deliberately indifferent to those violations." (ECF No. 5, ¶ 152) (citing *City of Canton*, 489 U.S. at 390; *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223–24 (3d Cir. 2014)). The Court agrees. Given the fact that police officers are frequently tasked with executing arrest warrants, and thus often confront situations in which

43

they may need to further search and/or seize a person or their property without a warrant, it is highly predictable that without proper training they may violate a citizen's constitutional rights.

Violation of the Fourth Amendment is the obvious consequence of insufficient training on lawful search and seizure practices, including what justifies searching and seizing property in the absence of a warrant. Although Cogley's allegations are somewhat vague, at this stage of proceedings it is improper to dismiss his *Monell* claim against the City of Butler. *See O'Donnell v. Cumberland Cnty.*, 195 F. Supp. 3d 724, 731–32 (M.D. Pa. 2016) (finding a constitutional injury is the predictable and obvious result of a county's alleged "failure to train its employees in the proper use of their authority to arrest and incarcerate individuals." And even where plaintiff's allegation was "admittedly vague, and lack[ed] reference to specific prior instances that would demonstrate Defendants' supposed 'prior notice,' it was nonetheless sufficient" at the motion to dismiss stage to state a *Monell* claim).[17] The Court thus denies Defendants' motion to dismiss Cogley's claims for failure to train and supervise.

## B. State Common Law Claims

In his amended complaint, Cogley raises multiple state common law claims, a majority of which are rooted in tort. In their motion to dismiss Cogley's amended complaint, Defendants raised an immunity defense for all tort claims pursuant to the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8546,[18] *et seq.* As stated in § 8541 of the PSTCA: "Except as

---

[17] The Court notes that even without citation to additional instances where the City of Butler unlawfully seized cell phones from other individuals, information which no doubt is difficult for litigants – specifically *pro se* litigants – to access, Cogley still makes out a plausible claim that the City of Butler has a custom of unlawfully seizing cell phones. The Court finds that his ability to plead this claim, given his limited access to further facts, is significant.

[18] 42 Pa. C.S.A. § 8546, defense of official immunity, states:
   In any action brought against an employee of a local agency for damages on account
   of an injury to a person or property based upon claims arising from, or reasonably

otherwise provided in the subchapter, no local agency[19] shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person."[20] *Id.* § 8541.

The scope of immunity provided under the PSTCA is broad but includes eight narrow exceptions for "negligent acts" under § 8542(b). Since Cogley does not bring any claims against Defendants for negligent acts, the exceptions are inapplicable. For allegations of intentional conduct, however, the PSTCA extends immunity to municipalities and to public officials in their official capacities, acting within the scope of their official duties. *Walker v. N. Wales Borough,* 395 F. Supp. 2d 219, 230 (E.D. Pa. 2005); *Kane v. Chester Cnty. Dept. of Children, Youth & Fams.* 10 F. Supp. 3d 671, 695 (E.D. Pa. 2014).

Cogley brings his state law claims for conversion, along with two claims for trespass to chattels, against Defendants May, Walters, and the City of Butler. (ECF No. 5). The remaining

---

related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on [its] behalf:

    (1) Defenses which are available at common law to the employee.

    (2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.

    (3) The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law.

[19] 42 Pa. C.S.A. § 8501 defines "local agency" as "[a] government unit other than the Commonwealth government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers or responsibilities under 53 Pa. C.S. 23(A) ...." The City of Butler is considered a local agency pursuant to the definition.

[20] May and Walters are employees of the Butler City Police Department, which is a local agency, and thus they qualify as individuals who may be entitled to immunity under § 8546 of the PSTCA. 42 Pa. C.S.A. § 8456, *et seq.*

45

claim alleging invasion of privacy does not name the City of Butler but is brought against May and Walters. (*Id.*). Cogley is suing Walters and May in their individual and *official* capacities. As such, the invasion of privacy claim constitutes a claim against the City of Butler since a claim against an individual defendant in his *official capacity* constitutes a claim against the municipality. *See Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 631, 644 (E.D. Pa. 2014) ("[A] claim against a local official brought against him in his official capacity is essentially a claim against the municipality itself."). Because municipalities are granted immunity under the PSTCA for claims of intentional tortious conduct, Cogley's state law claims for conversion, trespass to chattels, and invasion of privacy are dismissed, with prejudice, against the City of Butler, as well as against Walters and May in their official capacities.

The Court, however, will proceed with its analysis of Cogley's intentional tort claims brought against Walters and May in their *individual* capacities. Although the PSTCA grants the same immunity to employees as it does to their municipal employer, it does not shield employees sued in their individual capacities "from liability where [their] conduct constitutes a 'crime, actual fraud, actual malice, or willful misconduct.'" *Milbourne v. Baker*, No. 11-CV-1866, 2012 WL 1889148, at *5 (E.D. Pa. May 23, 2012) (citing Pa. C.S.A. § 8545). Pennsylvania courts, along with courts in this circuit, have held that "[a] police officer engages in willful misconduct if he commits an intentional tort subjectively knowing that his or her conduct is wrong." *Goodlin v. Rose*, No. 23-2304, 2025 WL 2423745, at *7 (E.D. Pa. Aug. 21, 2025) (citing *Walker v. N. Whales Borough*, 395 F. Supp. 2d 219, 231 (E.D. Pa. 2005)). But "[i]n order to exclude police officers from the protection of immunity under the [PSTCA], the police officer's 'willful misconduct' must be established in addition to the elements of an intentional tort.'" *Booker v. City of Phila.*, No. 12-CV-402, 2017 WL 1177094, at *11 (E.D. Pa. Mar. 29, 2017) (quoting *Gremo v. Karlin*, 363 F.

46

Supp. 2d 771, 793 (E.D. Pa. 2005)).   Moreover, "[t]he conduct of a police officer will only constitute 'willful misconduct' if the officer committed 'misconduct which the perpetrator recognized as misconduct and which was carried out with the intention of achieving exactly that wrongful purpose.'" *Id.* (quoting *Waldon v. Borough of Upper Darby*, 77 F. Supp. 2d 655, 658 (E.D. Pa. 1999)); *see also Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pitt.*, 641 A.2d 289, ("Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'").

*1. Cogley has sufficiently pled his claim for conversion.*

Cogley asserts that May, Walters, and the City of Butler are liable for conversion under Pennsylvania law.  (ECF No. 5, ¶¶ 63–64).  Based on the facts alleged in Cogley's amended complaint, the Court finds that he has sufficiently stated a plausible claim for conversion against May and Walters in their individual capacities.

Under Pennsylvania law, "conversion is the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" *Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (quoting *Cenna v. U.S.*, 402 F.2d 168, 170 (3d Cir. 1968)).  Cogley alleges that "May intentionally and unlawfully exercised dominion and control over [his] two cell phones, immediately depriving [him] of his possessory rights." (ECF No. 5, ¶ 56).  As stated in the amended complaint, May entered his residence without Cogley's consent and seized the cell phones while Walters, who acted as the alleged supervisor on the scene, "either personally directed the seizure or knowingly permitted and approved [] May's unlawful conduct." (*Id.* ¶¶ 58–59).  According to Cogley, May and Walters lacked any "lawful justification or warrant authority to

47

seize the phones at the time." (*Id.* ¶ 60). Cogley was without possession of his cell phones for a period of almost eight months. (*Id.* ¶¶ 61–62). He asserts that "May and Walters knowingly and intentionally interfered with [his] exclusive possessory rights in his property, constituting conversion under Pennsylvania law," and by doing so "while acting within the scope of their employment with the City of Butler … the City of Butler is vicariously liable for their conduct." (*Id.* ¶ 64).

Defendants assert that Cogley "has not alleged the Defendants did anything other than act in good faith within the scope of their official duties." (ECF No. 9, p. 16). According to Defendants, the amended complaint only alleges that May searched Cogley's home and seized his cell phones. They argue that the search of Cogley's home that led to officers' seizure of his phones "was pursuant to a warrant based on probable cause" and the cell phones "were seized as evidence in connection with an overdose death where [Cogley] was a person of interest." (*Id.*). But, as the Court has already found, Cogley has sufficiently alleged that the search was not supported by a warrant—the only warrant that existed was one for Cogley's arrest—and the seizure was further unlawful because May and Walters did not have a warrant to seize the phones, nor did any exceptions apply which would excuse their warrantless entrance into Cogley's residence where they found the cell phones. Thus, there existed no lawful justification to intentionally interfere with Cogley's use or possession of his cell phones. *See Bamont v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 163 F. Supp. 3d. 138, 155 (E.D. Pa. 2016) (finding that a seizure resulting from execution of a valid search warrant constitutes a lawful justification to defeat a conversion claim).

Defendants further argue that the PSTCA entitles May, Walters, and the City of Butler "immunity from liability for any damages resulting from an injury to a person or property caused

48

by an act of the [City], its employee, or any other persons," even where the "employee of the [City] who is liable in his individual capacity for civil damages caused by acts which are within the scope of his office or duties"; however, they fail to recognize that the PSTCA will not apply in such a situation as this one, where Cogley has pled that May and Walters engaged in "willful misconduct." (ECF No. 9, pp. 15–16) (quoting *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 594 (M.D. Pa. 2008)).

Cogley alleges that May and Walters' conduct constituted conversion under Pennsylvania law and caused an injury to his person or property which arose from or was "reasonably related to[] the office or the performance of the duties of [May and Walters]." *Id.* The factual allegations in the amended complaint clearly demonstrate that May and Walters seized his cell phone while executing Cogley's arrest pursuant to a PBPP warrant. (ECF No. 5, ¶¶ 14, 60–63). The Court finds that Cogley has sufficiently alleged that May and Walters intentionally interfered with his possessory rights of his cell phones when they entered his residence without the authority to do so and seized them. Moreover, May and Walters likely had the intent to seize his cell phones even though they did not possess a warrant because, as Defendants assert in their motion to dismiss, they seized the phones "as evidence in connection with an overdose death where [Cogley] was a person of interest." (ECF No. 9, p. 16). [21] But May and Walters did not arrest Cogley in connection with his suspected involvement in that overdose death, nor did they have any reason to enter the residence after Cogley was arrested. Still, while Walters was present and supervising,

---

[21] *See* ECF No. 3-1, p. 6 (the incident report explains May and Officer Doctor were "on a routine patrol in the area of ... [Cogley's] residence, in reference to an on going drug investigation" based on "information from confidential informants that Cogley had been selling narcotics out of his residence." Law enforcement was aware that Cogley was the subject of a BCP warrant prior to approaching his residence "to conduct [and] investigate the suspicious activity.").

49

May entered Cogley's residence and seized his cell phones. The facts, as recited above, show that Cogley has provided sufficient facts to state a plausible claim for conversion—an intentional tort—against May and Walters in their individual capacities. The Court further finds that Cogley has pled facts that allow the court to infer that their conduct was "willful." Thus, Defendants are precluded from asserting immunity under the PSTCA.[22]

Defendants motion to dismiss will be denied as to Cogley's conversion claim against Walters and May in their individual capacities.

   2.  *Cogley has not stated a plausible claim for trespass to chattels arising from the alleged "property damage" and "trashing of residence."*

Under Pennsylvania law, a claim for trespass to chattels requires a showing that defendants "intentionally: (a) dispossess[ed] another of the chattel, or (b) us[ed] or intermeddle[ed] with a chattel in the possession of another." *Rosemont Taxicab Co., Inc. v. Phila. Parking Auth.*, 372 F. Supp. 3d 803, 829 (E.D. Pa. 2018) (quoting *QVC, Inc.*, 159 F. Supp. 3d at 599). Cogley's assertion that May and Walters are liable for trespass to chattels is supported by his allegations that "Defendants had damaged, scattered, and interfered with [his] personal property, including [his] files, personal papers, household items, and property belonging to [his] deceased mother." (ECF No. 5, ¶ 73). Although Cogley alleges that he "received a copy of the search warrant for his residence indicating the alleged discovery of suspected drug paraphernalia during the search," the facts do not sufficiently allege that May and Walters' conduct when executing that search warrant

---

[22] The Court need not address Cogley's trespass to chattel claim at Count II—specific to May and Walters seizing his cell phones. If a plaintiff's conversion claim survives a motion to dismiss, then so too does a trespass to chattel claim because "[t]he elements of trespass to chattels and conversion—both intentional torts—are essentially the same" but trespass to chattel requires a lesser showing of interference with the property than conversion. *Hyman v. Cap. One Auto Fin.*, 306 F. Supp. 3d 756, 766 n. 12 (quoting *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 599 (E.D. Pa. 2016)).

was an intentional interference with his property. (*Id.* ¶ 33). Cogley claims that "a family member informed [him] that his residence had been 'trashed,' including the first-floor apartment where he resided and the basement where he stored his deceased mother's belongings [that he] inherited in 2021," that "Defendants had emptied trash bins and tossed papers, files, mail, and contents onto the floors, causing extensive damage," the boxes and containers that held his mother's property, as well as trash containers, were emptied "causing further destruction in the basement," and "[c]oncurrent with this discovery, [Cogley's] family member found several personal possessions missing, including a 60" flat-screen TV and a cordless drill and bit case." (*Id.* ¶¶ 36–39). Cogley contends that, "[a]t the time of discovery, it was evident Defendants had failed to secure [his] residence," as May and Walters left "multiple entry points to the residence unsecured, including the back door and the basement door, permitting further intrusion and interference with [his] property." (*Id.* ¶¶ 40, 74).

Cogley's trespass to chattels claim falls short. He fails to allege that May and Walters were involved in "trashing" his residence and taking the missing items. *See Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 402 (W.D. Pa. 2014) (granting motions to dismiss with respect to plaintiff's trespass and conversion claims because plaintiff failed to "specifically allege that [the named defendant] was involved in the seizure or destruction of his personal property."). Moreover, there are no facts, other than conclusory assertions, that show May and Walters had the requisite intention to dispossess or intermeddle with his personal property. *See QVC, Inc.*, 159 F. Supp. 3d at 600 (finding that plaintiff failed to "allege facts from which the court can infer that any of the Defendants intended to exercise control of" the plaintiff's chattel). Accordingly, the Court will

51

grant Defendants' motion to dismiss the trespass to chattels claim with prejudice as leave to amend would be futile.[23]

### 3. *Cogley alleges a sufficient invasion of privacy claim against May and Walters.*

For the following reasons, the Court holds that Cogley's invasion of privacy claim is sufficient as to May's entry of his residence, but fails as to the alleged access of his cell phones' contents.

An invasion of privacy action includes four separate and distinct torts: "(1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984) (citing *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424 (1975)). Cogley alleges two separate invasion of privacy claims against May and Walters. First, he asserts that "[u]pon information and belief, [] May accessed or attempted to access [his] private cell phone contents without lawful authority, constituting an unlawful intrusion upon [his] seclusion." (ECF No. 5, ¶ 87). Second, Cogley contends that "May also entered [his] residence without [his] permission to seize [his] cell phones, despite [Cogley] specifically requesting that a friend retrieve the phone instead. This warrantless, unauthorized entry constitutes a separate invasion of privacy under Pennsylvania law." (*Id.* ¶ 89). The Court notes that Cogley specified his invasion of privacy action for the former allegation is pursued as a claim for intrusion upon seclusion. Although Cogley does not specify which of the four applicable torts he brings the latter invasion of privacy

---

[23] As to the facts Cogley alleges in his amended complaint in reference to the alleged property damage and trashing of his residence, the Court, upon examination of his original complaint (ECF No. 1-7, ¶¶ 33–39), finds that Cogley has not alleged any further facts to support his claim. The Court, of course, is sympathetic to Cogley's loss or damage of property. However, Cogley has failed to supplement his initial complaint, after given leave to amend, with additional facts to state a claim for trespass to chattels, thus the Court is further persuaded that giving Cogley an additional chance to amend would be futile. *Compare id., and* ECF No. 5, ¶¶ 36–42.

claim under, the Court will also treat it as a claim for intrusion upon seclusion, as it is most appropriate given the allegations stated in his amended complaint.

The Court finds that Cogley fails to state a claim for intrusion upon seclusion related to his personal cell phones. Pennsylvania uses the definition of intrusion upon seclusion provided by the Second Restatement of Torts: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 537 (3d Cir. 2018); Restatement (Second) of Torts § 652B (1965). Cogley's initial assertion that he "had a reasonable expectation of privacy in the contents and data stored on his personal cell phones" is correct; however, he fails to allege any facts that otherwise satisfy the elements of an intrusion upon seclusion claim. (ECF No. 5, ¶ 86). Cogley makes only conclusory statements, contending that "[u]pon information and belief, [ ] May accessed or attempted to access [his] private cell phone contents without lawful authority, constituting an unlawful intrusion upon [his] seclusion." (*Id.* ¶ 87). Cogley makes no assertion, and provides no factual basis, for the Court to infer that May had the requisite intent to intrude upon his seclusion in taking, and possibly accessing, the cell phones. Although Pennsylvania courts have not defined "intent" in the context of intrusion upon seclusion claims, the Third Circuit has predicted that Pennsylvania courts would find intent if the tortfeasor "believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. U.S.*, 891 F.2d 1079, 1083 (3d Cir. 1989). Cogley does not allege that May or Walters actually accessed his private cell phone contents. He also fails to provide any facts that May or Walters, themselves, believed or were substantially certain that they did not have the authority to access the cell phones' contents. *See Minor v. Cumberland Twp.*, 258

F. Supp. 3d 518, 533 (W.D. Pa. 2017) (explaining that a plaintiff cannot make a cognizable claim for intrusion upon seclusion where he fails to demonstrate that the defendant intentionally committed the tort).

Additionally, Cogley fails to allege how the attempted, or successful, access of his cell phones was a substantial invasion that was highly offensive. He merely claims that their "conduct was intentional, highly offensive, and caused [him] emotional harm, dignitary injury, and loss of privacy." (ECF No. 5, ¶ 90). Those statements fail to satisfy the pleading standard, and the Court is not given any facts to infer that he experienced a substantial invasion that was highly offensive.

Conversely, the Court finds that Cogley sufficiently pled an intrusion upon seclusion claim as it relates to May's entrance into his residence "without [Cogley's] permission to seize [his] cell phones, despite [his] specific[] request[] that a friend retrieve the phones instead." (*Id.* ¶ 89). Cogley has provided the Court with a sufficient factual basis to establish that it is plausible that May and Walters knew, or were substantially certain, that they neither had personal permission, nor a lawful justification, to enter the residence. Throughout the amended complaint, Cogley maintains that May and Walters were never given consent to enter the residence, and the facts, taken as true, do not demonstrate that any circumstances existed that would provide a lawful justification for their entrance. The Restatement (Second) of Torts § 652B explains, through illustration, that "a warrantless search of a home qualifies as a physical intrusion into a place where the plaintiff has secluded himself." *Muhammad v. U.S.*, 884 F. Supp. 2d 306, 317 (E.D. Pa. 2012) (citing Restatement (Second) of Torts § 652B). Moreover, courts in this circuit have found defendants who enter plaintiff's home in violation of the Fourth Amendment have engaged in "an invasion [that] would be highly offensive to an ordinary reasonable person." *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 549 (M.D. Pa. 2008).

54

As to Defendants' attempt to defeat the intrusion upon seclusion claim by invoking immunity under the PSTCA, intrusion upon seclusion is an intentional tort and is thus a willful violation. Therefore, the PSTCA does not apply.

Accordingly, Cogley has stated a plausible claim for intrusion upon seclusion as it relates to May's entrance into his residence. He has not, however, pled an intrusion upon seclusion claim for access to the contents of his cell phones. The Court will deny Defendants' motion to dismiss as to his invasion of privacy claim for May's entrance into his residence; however, the Court will grant, without prejudice, Defendants' motion to dismiss Cogley's invasion of privacy claim for intrusion upon seclusion into his cell phones.

### 4. *Cogley fails to state a claim for breach of oral contract.*

Cogley additionally brings a claim against Walters and the City of Butler for breach of oral contract under Pennsylvania law. Pursuant to Pennsylvania law, a plaintiff's "cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). To establish the existence of a contract, a plaintiff must assert facts that demonstrate the three elements of contract formation: "an offer, acceptance, and consideration." *Est. of Caruso v. Caruso*, 322 A.3d 885, 896 (2024). And if a plaintiff "is alleging breach of an oral contract, the burden of proving the existence of the contract is on the plaintiff" who must produce "clear and precise evidence" of its existence. *Luther v. Kia Motors Am., Inc.*, 676 F. Supp. 2d 408, 416 (W.D. Pa. 2009) (first citing *Taylor v. Creditel Corp.*, No. 04-2702, 2004 WL 2884208, at *5–6 (E.D. Pa. Dec. 13, 2004); and then quoting *Martin v. Safeguard Scis, Inc.*, 17 F. Supp. 2d 357, 368 (E.D. Pa. 1998)).

55

Cogley's amended complaint alleges that, prior to the search of his residence, he and Walters "reached an oral agreement that [his] residence would be locked and secured after the search was completed."[24] (ECF No. 5, ¶ 79). Cogley maintains that he "expressly requested that his residence be secured and his personal property protected," to which Walters "expressly agreed." (*Id.* ¶ 80). He alleges that he "and Walters mutually assented to this arrangement, forming a valid oral contract under Pennsylvania law," and that Walters' failure "to secure the premises, including failing to lock a front bedroom window and failing to lock or secure the back door of the premises" constituted a breach of that oral contract. (*Id.* ¶¶ 81–82). The Court disagrees.

Cogley fails to plead that an oral contract was formed. For purposes of examining whether an oral contract exists between the parties, "the threshold inquiry is whether the parties manifested mutual intent to be bound by the terms of the agreement." *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d. 459, 488 (E.D. Pa. 2018) (citing *Guzi v. Morano*, No. 10-1112, 2013 WL 4042511, at *10 (E.D. Pa. Aug. 8, 2013) ("a mutual intent to be bound by a contract or agreement "usually manifests as 'an offer or proposal by one party followed by an acceptance by the other party.'" (quoting *Bayliss-Allen v. Cadence Design Sys., Inc.*, No. 99-CV-3240, 2000 WL 1156857, at *4 (E.D. Pa. Aug. 16, 2000))). Where a party alleges that an oral contract was formed, "courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent." *Id.* In the amended complaint, the only factual assertion that Cogley makes regarding the requisite intent to be bound was the claim that Walters agreed to Cogley's request that his

---

[24] Based on the surrounding facts, the Court is under the impression that Cogley is referring to the search executed pursuant to the warrant obtained separate from the initial arrest and accompanying search and seizure to which he alleged there was no warrant, and he did not give consent to the search.

residence be locked after the search was complete.  (ECF No. 5, ¶¶ 79–80).  Cogley thus insists that he "and Walters mutually assented to this arrangement, forming a valid oral contract under Pennsylvania law." (*Id.* ¶ 80).  But a mere assertion that Cogley's request was allegedly accepted by Walters, without more, is too vague to demonstrate the existence of any enforceable contract.

Further, Cogley attempts, but fails, to establish any consideration to support contract formation.  If "there is no agreement or even a discussion as to *any* of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to *reasonably* believe that it could be enforceable in an action at law." *Ecore Int'l, Inc.*, 343 at 490 (emphasis in original) (quoting *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. Ct. 2006)).  Consideration, defined as "an act, forbearance, or return promise bargained for or given in exchange for the original promise," is required to form a contract.  *Mucci v. Home Depot*, No. 00-4946, 2001 WL 1609851, at *3 (E.D. Pa. Dec. 18, 2001).  "The test for consideration is 'whether the promisee, at the instance of the promisor, has suffered any detriment, or whether, in return for the promise, he has done something that he was not bound to do, or has promised to do some act, or has abstained from doing something." *Omaha v. Markowitz*, 434 F. Supp. 3d 303, 315 (E.D. Pa. 2020) (quoting *Mikso v. Kida*, 172 A. 101, 102 (1934)).  The Supreme Court of Pennsylvania has further found that "[i]f the promisee suffered any detriment, however slight, or though he has suffered no real detriment, if he has done what he was not otherwise bound to do, in return for the promise, he has given the consideration, and the court will not ask whether the promisor was benefited." *Mikso v. Kida*, 172 A. 101, 102 (1934).

In his brief opposing Defendants' motion to dismiss, Cogley insists that "by cooperating with officers' transition of custody, relinquishing control of the premises, and relying on Walters' assurance that the residence would be secured, [he] undertook actions he was not otherwise

obligated to take," which he contends qualifies as consideration. (ECF No. 12, p. 18). Further, he asserts that "[i]n return, Walters undertook a specific commitment—to secure the property—a promise that induced [Cogley's] reliance and for which he suffered damages when the premises were later left unsecured." (*Id.*). The Court finds that Cogley's purported consideration falls short for purposes of executing a contract.

First, even taking the facts alleged in Cogley's amended complaint as true, the Court finds that he fails to allege that he took any of the asserted actions in exchange for a bargained for promise that Walters would secure his residence after conducting the search. (*Id.*); *see also Schwartz v. Taylor*, No. 17-CV-3799, 2021 WL 4818283, at *2 (E.D. Pa. Oct. 15, 2021) (explaining that plaintiff's allegation that the defendant received "several benefits" was not considered "valid consideration" because he did not "allege that the[] benefits were conferred *in exchange* for the bargained for promise ..." (emphasis in original)). As to Cogley's assertion that he cooperated with the transition of custody, the only facts he alleges that reference a "transition" are (1) his transfer from "May's patrol vehicle to Officer Doctor's patrol vehicle while Officer Doctor and [] Walters accompanied him," and (2) his "transport[] to [BCP] by Officer Doctor" where he was "committed pursuant to the PBPP warrant on an unrelated technical parole violation." (ECF No. 5, ¶¶ 26–29). Cogley did not have the ability to decline either his transfer to a different officer's vehicle, which took place for purposes of executing his arrest, or his transport to BCP where he was committed pursuant to that arrest. His assertion that he gave up control of his residence is unconvincing. Once officers obtained a search warrant, Cogley did not have any control over his residence. Thus, Cogley's claim that he "relinquish[ed] control of the premises" is a misstatement—he was in custody and off the premises, and he did not have any right to object to the search once the warrant was obtained. *See Schneckloth v. Bustamonte*, 412

U.S. 218 (1973) (explaining that consent can justify a search when police have not obtained a warrant, but if police have a warrant, consent is unnecessary for execution of a search within the scope of that warrant).

Moreover, Cogley did not consent to a search of his residence in exchange for Walters' promise to secure it. The Court notes that Cogley's actions, which he identifies as consideration supporting the oral contract, took place before the alleged oral contract was executed. According to Cogley's account of the facts, he did not receive the copy of the search warrant for his residence until after he had been processed at BCP, meaning he had already cooperated with the transition of custody and no longer had authority to withhold consent for officers to search his residence. (ECF No. 5, ¶¶ 30, 33); *See Temple Univ. Hosp. v. Russell Reimbursement Advisors, Inc.*, No. 16-CV-2645, 2017 WL 1001186, at *9 (E.D. Pa. Mar. 15, 2017) ("It is too-well settled to require citation that generally for an act to constitute consideration it is essential that the promise to do it be simultaneous with the execution of the contract.").

Cogley appears to further allege promissory estoppel to establish creation of the oral contract. In his brief opposing Defendants' motion to dismiss his amended complaint, Cogley states that he pled consideration by "relying on Walters' assurance that the residence would be secured" and that by making that assurance, Cogley "suffered damages when the premises were later left unsecured." (ECF No. 12, p. 18). The Third Circuit has explained that "[p]romissory estoppel allows the court to enforce a party's promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citing *Cardmone v. Univ. of Pitt.*, 384 A.2d 1228, 1233 (1978)). Further,

the action or forbearance that plaintiff took must have "amounted to a substantial change of position." *Ankerstjerne v. Schlumberger Ltd.*, 155 F. App'x. 48, 51 (3d Cir. 2005) (quoting *Kaufman v. Mellon Nat'l Bank & Trust Co.*, 366 F.2d 326, 332 (3d Cir. 1966)).

Cogley seemingly asserts that Walters' promise to secure his residence induced his forbearance from otherwise securing the residence after the search. The Court finds that Cogley fails to establish detrimental reliance on Walters' purported promise. Cogley does not plead any facts in his amended complaint or his supporting briefs that show he made a "substantial change of position" in reliance on the alleged promise, and it is unlikely that he would have had the opportunity or choice to otherwise secure his residence since he was in custody during the time of the search.

The Court will grant Defendants' motion to dismiss Cogley's claim for breach of oral contract with prejudice, as the necessary elements to establish the existence of an oral contract have not been met and leave to amend would be futile.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss pursuant to Rule 12(b)(6) by Order of Court to follow. The Court will grant, with prejudice, Defendants' motion to dismiss Cogley's claims for (1) violation of his procedural due process rights under the Fourteenth Amendment; (2) violation of his substantive due process rights under the Fourteenth Amendment; (3) failure to intervene; (4) First Amendment denial of access to communication; (5) trespass to chattels – specific to property damage and trashing of property – under Pennsylvania Law; (6) breach of oral contract under Pennsylvania law; and (7) invasion of privacy – specific to his claim alleging intrusion upon seclusion into his personal cell phones – under Pennsylvania law.

The Court will deny Defendants' motion to dismiss the following claims: (1) unreasonable search and seizure under the Fourth Amendment; (2) unlawful seizure and retention of property under the Fourth Amendment; (3) civil rights conspiracy; (4) failure to train and supervise under *Monell*; (5) conversion under Pennsylvania law; (6) trespass to chattels related to Cogley's cell phones; and (7) invasion of privacy under Pennsylvania law. These claims will proceed to discovery.

BY THE COURT:

Signed: 8/5/26

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE